Carl W. Collins (State Bar No. 109282)
Attorney at Law
1127-12th Street, Suite 202
P.O. Box 3291
Modesto, California 95353
Telephone: (209) 521-8100
Facsimile: (209) 524-8461

Attorney for Debtors
Emil & Evelyn Gamble

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

(Modesto Division)

| | |
|---|---|
| In re: | Case No: 08-92089-D-11 |
| Emil Gamble and Evelyn Gamble, | DC NO. CWC-5 |
| 2012 N Crest Court Modesto, CA 95355 | Chapter 11 case |
| SS. XXX-XX-0641 SS. XXX-XX-4134 | Date: January 27, 2010 Time: 1:00 p.m. |
| Debtors. | Place: Modesto Courtroom Department D |

**FIRST AMENDED DISCLOSURE STATEMENT**
**(January 20, 2010)**

Emil Gamble and Evelyn Gamble, as debtors and debtors-in-possession submit the following First Amended Disclosure Statement (the "Disclosure Statement").

**PART A: DEFINITIONS IN PLAN AND DISCLOSURE STATEMENT.**

Allowed Claim means a Claim:

1. With respect to which a Proof of Claim has been timely filed; and

    (a) Either is not a disputed claim (but only to the extent that such Claim is not a disputed claim); or

    (b) The Claim has been allowed (and only to the extent allowed) by a final Order.

FILED January 20, 2010 CLERK, U.S. BANKRUPTCY COURT EASTERN DISTRICT OF CALIFORNIA 0002361487

2. That appears on the schedules and list of creditors prepared and filed with the Bankruptcy Court and is not listed as disputed, contingent, unliquidated or unknown as to amount.

3. No Claim shall be considered an Allowed Claim if an objection to the allowance thereof is interposed at any time and such objection has not been denied by an order or judgment that is no longer subject to appeal and as to which no appeal is pending.

Case shall mean the bankruptcy case commenced on September 30, 2008, by the debtors filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, which petition was assigned Case No. 08-92089. On January 23, 2009, such case was converted to a case under Chapter 11 of the Bankruptcy Code.

Chapter 11 shall mean Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-46.

Claim shall be defined as in § 101(5) of the Code.

Code shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

Confirmation shall mean entry by the Court of an order confirming the Plan in accordance with Chapter 11.

Court shall mean the United States Bankruptcy Judge for the Eastern District of California (Modesto Division).

Creditor shall be defined as in § 101(10) of the Code.

Debtors shall mean Emil Gamble and Evelyn Gamble doing business as Modern Cuts and California Beauty Supply.

Debtors-in-Possession or similar phrase shall mean the debtors in the capacity and with the status and rights conferred by § 1107 of the Code.

Effective Date shall mean thirty (30) days after an order confirming this Plan has become final and unappealable.

Plan shall mean the First Amended Chapter 11 Plan dated January 20, 2010, as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

Reorganized Debtors mean Emil Gamble and Evelyn Gamble doing business as Modern Cuts and California Beauty Supply after Confirmation of the Plan.

Substantial Consummation of the Plan or similar phrases shall be defined as in 11 U.S.C. § 1101(2).

**PART B: PURPOSE.**

The purpose of the Disclosure Statement is to provide adequate information to enable a hypothetical reasonable investor typical of the holders of claims in the case to make an informed judgment about the proposed Plan. The source of the information contained in the Disclosure Statement is Emil Gamble and Evelyn Gamble, the schedules of assets and liabilities filed by the Debtors in this case, and the proofs of claims filed by creditors.

Certain terms are defined in Part I of the Plan and in Part A of the Disclosure Statement.

If there are any provisions in the Disclosure Statement which conflict with provisions of the Plan, the provisions of the Plan control.

Approval of the Disclosure Statement does not mean the Court has verified the accuracy of the information contained in it.

**PART C: DESCRIPTION OF DEBTORS' BUSINESS ACTIVITIES.**

The Debtors have owned and operated five hair styling salons

dba Modern Cuts and two retail beauty supply stores dba California Beauty Supply for over 8 years. The nature of the business is providing full service beauty care and retail beauty supplies. Currently, the business is comprised of two Modern Cuts stores in Modesto, California, one Modern Cuts store in Riverbank, California and one Modern Cuts and one California Beauty Supply store in Los Banos, California. The Debtors have a customer base of approximately 800, employ approximately 35 people and have annual sales of approximately 1.2 million dollars.

During 2007 and 2008, the debtors attempted to expand their area of business opportunity by opening a new California Beauty Supply store in Patterson, California. The subsequent downturn in the local economy resulted in a loss of cash flow necessary to sustain business operations for the new store which was eventually closed. In addition, poor financial performance necessitated the closing of a Modern Cuts store in Modesto, California in November of 2007.

**PART D: POST-PETITION EVENTS AND LEGAL PROCEEDINGS**

Since the filing of the Chapter 11 case a number of activities have occurred to facilitate debtors' business operations and assist in the formulation of a plan of reorganization.

1) Debtors have employed legal counsel to represent them in this Chapter 11 case.

2) Debtors have employed an accountant to assist them in this Chapter 11 case.

3) Debtors have filed all monthly operating reports and

paid all quarterly fees to the U.S. Trustee pursuant to Local Bankruptcy Rules of Procedure. The monthly operating reports filed since conversion of the case to Chapter 11 for the period January 2009 through October 2009 generally show a modest profit. The Debtors are current on post-petition taxes.

**PART E: HISTORICAL AND CURRENT FINANCIAL INFORMATION.**

The Debtors' schedules of assets and liabilities filed with the Court at the beginning of the case showed assets of $506,0400.00 and liabilities of $1,080446.28.

The Debtors' Real Property was valued $400,000.00 in the original schedules. Assuming this value remains correct, based on the claims filed, without conceding the correctness of such claims, the Debtors' current assets and liabilities are:

Assets:

| | |
|---|---:|
| Debtors' Real Property | $400,000 |
| Bank deposits | $9,000 |
| Vehicles | $57,040 |
| Equipment | $15,000 |
| Inventory | $8,000 |
| **Total Assets** | **$489,040** |

Liabilities:

| | |
|---|---:|
| Unclassified administrative claims - estimated | $20,000 |
| Unclassified priority tax claims | $24,203.85 |
| Unsecured claims less than $2,500 | $4,479.78 |
| Secured claim of GMAC - Savanna | $13,263.19 |
| Secured claim of GMAC - Yukon | $15,625.73 |
| Secured claim of Finance & Thrift - Lexus | $3,896.54 |

```
Secured claim of Finance & Thrift - Mitsubishi . . $5,455.00
Secured claim of American Honda - Acura  . . . . $15,886.89
Secured claim of U.S. Bank National  . . . . . . $465,996.59
Secured claim of TCIF, LLC . . . . . . . . . . . $117,338.46
Secured claim of Leaf Funding, Inc. . . . . . . $32,771.81
Secured claim of ILS Funding, LLC  . . . . . . . $38,000.00
Unsecured claims   . . . . . . . . . . . . . . . $586,509.00
```
**Total Liabilities** . . . . . . . . . . . . . . ***$1,299,222.90***

## PART F: DEBTOR'S EARNINGS

Emil Gamble anticipates receiving minimal post-confirmation salary/draw per month over and above living expenses.

## PART G: MANAGEMENT AND COMPENSATION

The management of the Reorganized Debtors' business will continue post-confirmation under the supervision of Emil Gamble.

## PART H: MATERIAL POST-PETITION EVENTS

Debtors filed their Chapter 13 petition on September 30, 2008. On January 23, 2009, the case was converted to a case under Chapter 11. Since the conversion to Chapter 11, a number of activities have occurred to facilitate debtors' business operations and assist in the formulation of a plan of reorganization.

1) Debtors have employed legal counsel to represent them in this Chapter 11 case.

2) The meeting of creditors pursuant to 11 U.S.C. § 341 was held on February 24, 2009.

3) The Preliminary Status Conference was held and concluded on April 1, 2009.

4) No trustee was appointed and the Debtors are serving as Debtors-In-Possession.

5) The United States Trustee was unable to appoint a committee of unsecured creditors.

6) No adversary proceedings have been filed.

7) Debtors have filed all monthly operating reports and paid all quarterly fees to the U.S. Trustee pursuant to Local Bankruptcy Rules of Procedure. The monthly operating reports filed since conversion of the case to Chapter 11 for the period January 2009 through December 2009 generally show a modest profit. The Debtors are current on post-petition taxes.

9) The deadline for non-governmental creditors to file claims was May 26, 2009. The deadline for governmental creditors to file claims was July 22, 2009.

### PART I: LEGAL PROCEEDINGS

The Debtors are not a party to any legal proceedings, and are unaware of any threatened or likely legal proceedings.

### PART J: DESCRIPTION OF THE PLAN

The following is a brief description and summary of the treatment of various classes of creditors under the Plan. More complete information is found in the Plan.

The holders of Class 1 unclassified administrative claims will be paid in cash within 30 days of the Effective Date of the Plan, unless they agree to another treatment. Other than U. S. Trustee quarterly fees, the only unclassified administrative claim is held by the Debtors' attorney for payment of legal services rendered during the case. His claim is expected to be approximately $25,000.00 on the Effective Date of the Plan,

beyond funds being held in trust under his initial retainer. He has agreed to allow the Debtors to make deferred payments if necessary.

Quarterly fees will be due to the U.S. Trustee until the case is dismissed, closed, or converted to a Chapter 7 case. The Debtors have agreed that payment of all quarterly fees due to date will be paid as a condition of confirmation of the Plan. The Debtors expect a final decree would be entered during the first quarter of 2010.

The holders of Class 2 unclassified priority tax claims will receive within 90 days after the Effective Date quarterly cash payments distributed pro rata over a period not exceeding five years from the Petition Date, as allowed by the court, and equal to the allowed amount of the holder's claim. The only holder of a Class 2 unclassified priority tax claim consists of the Internal Revenue Service in the amount of $24,203.85.

The holders of Class 3 claims consist of the claims of General Unsecured Creditors allowed by the court in an amount less than $2,500.00. The holders of these claims shall be paid in full as an administrative convenience within thirty (30) days following the Effective Date. It is estimated that these claims total $4,479.78.

The holder of the Class 4 claim consists of the claim of GMAC secured by a security interest in the Debtors' 2006 GMC Savanna motor vehicle. The Class 4 claim holder will retain its security interest and receive payments bearing interest according to the instruments creating same until paid in full.

The holder of the Class 5 claim consists of the claim of

GMAC secured by a security interest in the Debtors' 2005 GMC Yukon motor vehicle. The Class 5 claim holder will retain its security interest and receive payments bearing interest according to the instruments creating same until paid in full.

The holder of the Class 6 claim consists of the claim of Finance and Thrift Company secured by a security interest in the Debtors' 2001 Lexus ES 300 motor vehicle. The Class 6 claim holder will retain its security interest and receive payments bearing interest according to the instruments creating same until paid in full.

The holder of the Class 7 claim consists of the claim of Finance and Thrift Company secured by a security interest in the Debtors' joint interest in a 2004 Mitsubishi Lancer motor vehicle. The Debtors share an interest in this vehicle with Tracy Rios. The Debtors shall surrender their interest in said vehicle to Finance and Thrift Company. Pursuant to the Proof of Claim filed by Finance and Thrift Company in the case, the Class 7 Claim shall be allowed in the amount of $5,455.00 as of September 30, 2008, less any principal reductions since that date and shall be treated as a general unsecured claim under Class 13 of this plan.

The holder of the Class 8 claim consists of the claim of American Honda Finance secured by a security interest in the Debtors' 2006 Acura TSX motor vehicle. The Class 8 claim holder will retain its security interest and receive payments bearing interest according to the instruments creating same until paid in full.

The holder of the Class 9 claim consists of the claim of

HomEq Servicing as servicing agent for U.S. Bank National Association, Trustee ("HomEq") secured by a first deed of trust on the Debtors' interest in real property located at 2012 Northcrest Court, Modesto, California 95355. Pursuant to an agreement between the parties, the promissory note in favor of HomEq shall be modified as follows:

   a. HomEq shall have an allowed Class 9 secured claim in the sum of $472,094.76 as of January 31, 2010 amortized over a 30 year period and accruing interest at the rate of five and one quarter percent (5.25%) per annum from until paid in full;

   b. The Class 9 claim shall be paid in monthly installments of $2,617.48 commencing February 1, 2010 and continuing on the 1st day of each month thereafter until paid in full;

   c. Principal may be prepaid at any time without the payment of a prepayment premium or other penalty;

   d. No further impounds shall be required or due under the note as the Debtors will acquire their own insurance coverage on the property and pay their own real property taxes; and

   e. HomEq shall retain its deed of trust according to the instruments creating same.

The holder of the Class 10 claim consists of the claim of TCIF, LLC secured by a second deed of trust on the Debtors' interest in real property located at 2012 Northcrest Court, Modesto, California 95355. There is no equity in the real property serving as collateral for the holder of the Class 10 claim. The Class 10 Claim shall be allowed as a secured claim in the amount of $0.00 and the deficiency or undersecured portion of the Class 10 claim shall be treated as a general unsecured claim

under Class 13 in the allowed amount of $117,338.46 as of September 30, 2008, less any principal reductions since that date.

The holder of the Class 11 claim consists of the claim of Leaf Funding, Inc. secured by a security interest in the Debtors' equipment of their Modern Cuts business located at 2160 Pacheco Blvd., Los Banos, CA. There is minimal equity in the personal property serving as collateral for the holder of the Class 11 claim. The Class 11 Claim shall be allowed as a secured claim in the amount of $3,000.00 and the deficiency or undersecured portion of the Class 11 claim shall be treated as a general unsecured claim under Class 13 in the allowed amount of $29,771.81 as of September 30, 2008, less any principal reductions since that date. The holder of the Class 11 claim shall receive monthly payments in the amount of $250.00 until the allowed secured claim is paid in full.

The holder of the Class 12 claim consists of the claim of ILS Funding, LLC secured by a security interest in the Debtors' equipment of their California Beauty Supply business located at 1045 Sperry Avenue, Patterson, CA. There is minimal equity in the personal property serving as collateral for the holder of the Class 12 claim. The Class 12 Claim shall be allowed as a secured claim in the amount of $3,000.00 and the deficiency or undersecured portion of the Class 12 claim shall be treated as a general unsecured claim under Class 13 in the allowed amount of $35,000.00 as of September 30, 2008, less any principal reductions since that date. The holder of the Class 12 claim shall receive monthly payments in the amount of $250.00 until the allowed secured claim is paid in full.

The holders of Class 13 claims consist of the claims of general unsecured creditors. Class 13 claims shall be paid 10% of the allowed amount of such claim with no interest accruing on such claims. Payments on the allowed unsecured claims shall be made pro rata over 5 years on an annual basis in the estimated amount of $11,730.18 commencing no later than December 31, 2010 and continuing thereafter until paid in full. It is estimated that General Unsecured Claims including the estimated undersecured claims total $586,509.00.

### PART K: IMPAIRED CLASSES

The impaired classes are Classes 2, 3, 7, 10, 11, 12 and 13.

### PART L: MEANS OF EFFECTUATING THE PLAN

The Reorganized Debtors may transact business and conduct their affairs free of any restriction of the Court or the Code, except as explicitly set forth in the Plan and various security documents and debt instruments. Without limiting the forgoing, the Reorganized Debtors will continue to operate their business and may obtain credit, incur debt, grant security interests and liens and otherwise acquire and dispose of assets. The Reorganized Debtors shall make such payments and distributions in respect of Allowed Claims and perform such obligations as required in the Plan. The Reorganized Debtors, creditors and interest holders shall take all actions and execute all documents necessary to effectuate the terms of the Plan.

### PART M: LIQUIDATION ANALYSIS

Given the allowed claims of secured creditors totaling $708,234 and the allowed claims of priority tax claims totaling $24,203.85, which exceed the amount of assets available for

liquidation, the allowed claims of general unsecured creditors would receive $0.00 in a Chapter 7 case. The Plan provides for a distribution of 10% of all allowed unsecured claims with no interest accruing in the estimated amount of $58,650.90. While allowed unsecured creditors will experience a delay in the payment of their claims without interest, such creditors would not receive more under a Chapter 7 liquidation.

### PART N: REVESTING OF RIGHTS AND DISCHARGE

On the Effective Date the Reorganized Debtors shall be vested with all property of the estate except as otherwise provided in the Plan. Confirmation of the Plan binds the Debtors, their creditors, holders of equity interests, and any persons or entities under the Plan to the Plan's provisions, regardless of whether they accepted the Plan.

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5). The Debtors will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### O: INCOME TAX CONSEQUENCES

Debtors do not believe that there are any significant adverse administrative tax consequences relating to the proposed plan.

### PART P: VOTING

Under the Bankruptcy Code, certain percentages of impaired classes of claims and interests must vote to accept the Plan. In

this case, it appears that the impaired classes are Classes 2, 3, 7, 10, 11, 12 and 13.

A class of creditors accepts a Plan when holders of at least two-thirds in amount and more than one-half in number have voted to accept such Plan.

Holders of claims will be provided with copies of the Disclosure Statement, the Plan, and a ballot for accepting or rejecting the Plan. Once the Disclosure Statement has been approved, a hearing will be scheduled before the Bankruptcy Court for the purpose of determining if the necessary classes have accepted the Plan and for the further purpose of determining that additional requirements of the Bankruptcy Code have been met for confirmation of a Plan.

**PART Q: FINAL DECREE**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Dated: January 20, 2010

Carl W. Collins
Attorney for Debtors

Dated: 1-20-10

Emil Gamble

Dated: 1-20-10

Evelyn Gamble